**\*FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
KALOW & SPRINGUT, LLP, on behalf
of itself and all those similarly situated,

              Plaintiff,

    v.

COMMENCE CORPORATION,

            Defendant.
—————————————————————

Civil Action No. 07-3442 (FLW)

**OPINION**

**WOLFSON, United State District Judge:**

Plaintiff Kalow & Springut, LLP ("Plaintiff" or "Kalow") brings the instant putative class action suit against Defendant Commence Corporation ("Defendant" or "Commence") to recover damages arising from the alleged failure of computer software that Plaintiff purchased from Defendant.  Essentially, Plaintiff alleges that Defendant intentionally placed a "time bomb" to disable the software, and as a result, Plaintiff alleges that the users of the software suffered various damages.  In the instant matter, Plaintiff seeks certification of a single class of all users of networked versions of Commence's software on March 20, 2006.  In the alternative, Plaintiff seeks certification of two subclasses.[1]  For the reasons set forth below, the Court denies Plaintiff's motion to certify without prejudice.

—————————————

[1] The Court will further discuss these subclasses <u>infra</u>.

## I.      BACKGROUND

The pertinent facts recounted below are derived from the Amended Complaint. Kalow, a law firm, started using Commence's software as early as 2000 for customer relationship management, timekeeping, patent docketing, and calendering. Kalow initially spent several thousand dollars for the software, version 2.1, and later purchased an upgrade. Once Kalow purchased Commence's software, it became reliant upon the software because the information entered into the program is converted into a unique proprietary format which is not easily convertible to other formats. According to Plaintiff, on March 20, 2006, all versions of Commence's Software stopped working because the software package included a computer code (referred to as a "time bomb"), which rendered the software inoperable after that date.[2]

In that connection, Plaintiff asserts that Commence responded to the issue in two ways: first, for customers who had purchased the newest versions of its software, Commence made "a fix" available after a period of time that allowed the software to function again. However, Commence refused to fix the issue for any user who owned a version or older, such as Kalow.[3] The only option

_____

[2]Commence supports its software under a software maintenance agreement which entitles the customer to all product updates, enhancements and fixes for a period of 12 months from the original software purchase date. This agreement is renewable at a small cost to the customer. According to Defendant, and not disputed by Plaintiff, Plaintiff did not enter into any software maintenance or technical support agreement for the software product it purchased from Commence.

[3]According to Commence, Plaintiff was using the discontinued "version 2000" software on March 20, 2006. This specific version was discontinued several years before the alleged crash by the "time bomb" occurred. Thus, Defendant asserts that Kalow, and users of the older and discontinued versions of the software, were not eligible for the same support upgrades or patches as those with newer versions. In that respect, Defendant claims that Plaintiff was using Defendant's version of the software at it own risk knowing that Commence would not offer any support in case of a defect.

2

available to the users of older Commence software was to purchase the current software upgrade. Because Kalow, and users like Kalow, had become reliant on the software and the need to access the information stored in a unique proprietary format in the program, they were forced to purchase an upgrade.  Plaintiff also claims that while some users, those with newer software with maintenance packages, did not have to purchase the upgrade, they nonetheless suffered injuries in the time and expenses necessary to diagnose the problem, as well as losses in productivity for the period that the software failed to function properly.

Defendant claims that the code that purportedly caused the software's malfunction is not a "time bomb" and such malfunction did not affect all users.  See Deposition of Commence's President Larry Caretsky's at pp. 26-27.  Defendant also maintains that the malfunction did not cause a total shut-down of the software or cause a total corruption of any user's entire computer system. See Deposition of Commence Chief Techology Officer Todd Pape at pp. 27-29.  Rather, the malfunction affected the synchronization engine (a component of the server software) which allows for the sharing of certain data.  Id.

In its Amended Complaint, Plaintiff alleges causes of action under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA").  On this motion, Plaintiff requests that this case be certified as a class action on behalf of all of the networked users of Commence software who suffered damages when the software stopped working on March 20, 2006 ("All User Class").  In the alternative, Plaintiff seeks certification of two subclasses: the first subclass consists of all users of networked versions of Commence's software on March 20, 2006, who were supplied with a patch but did not have to purchase an upgrade to apply the patch ("Non-Upgrade Class"); and the second subclass consists of

3

all users of networked versions of Commence's software on March 20, 2006, who were required to purchase an upgrade to apply the patch ("Upgrade Class").

## II.      STANDARD OF REVIEW

Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate that the class satisfies the requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed. R. Civ. P. 23(a). Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. Because Plaintiff here seeks certification under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as predominance and superiority. In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009).

Importantly, the Third Circuit has instructed that "each Rule 23 component [must] be satisfied" in order for a court to certify a class. In re Hydrogen Peroxide, 552 F.3d 305, 310 (3d Cir. 2008) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 630 (1997) (Breyer, J., concurring in part and dissenting in part) (stating that Rule 23 decisions implicate "highly fact-based, complex, and difficult matters")). In that regard, "[c]lass certification is an especially serious decision, as it 'is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle [non-meritorious] claims on the part

of defendants)." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 162 (3d Cir. 2001).   In Hydrogen Peroxide, the Third Circuit urged district courts, where appropriate, to "'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" 552 F.3d at 316 (quoting Newton, 259 F.3d at 167). An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." Id.  The predominance inquiry is especially dependent upon the merits of a plaintiff's claim, since "the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." Id. at 310-11 (citations and quotations omitted).  "'If proof of the essential elements of the cause of action requires individual treatment,'" then predominance is defeated and a class should not be certified. Id. (quoting Newton, 259 F.3d at 172); see In re Constar, 585 F.3d at 780.

As a preliminary matter, Defendant takes issues with the definition of the class or the subclasses Plaintiff proposes on this motion.  Commence argues that Plaintiff's request for certification of a single class of all users, or the subclasses, of networked versions of Commence software is improper because Plaintiff failed to plead these classes in its Amended Complaint. Defendant maintains that Plaintiff only defined the class as "[a]ll persons who purchased Commence Corporation software and were using it as of March 20, 2006."  Amended Complaint at ¶ 25. Defendant's position that Plaintiff is confined to its proposed class definition as pled in the Amended Complaint is not supported by the case law.  Indeed, Plaintiff is not bound by the class definitions proposed in its Amended Complaint, and the Court can consider Plaintiff's revised definitions, albeit those revisions are made in its motion for class certification.  Weisfeld v. Sun Chem. Corp., 84 Fed. Appx. 257, 259 (3d Cir. 2004)("a court is not bound by the class definition proposed in the

complaint.")(citations and quotations omitted); Gates v. Rohm & Hass Co., 265 F.R.D. 208, 215 n.10 (E.D. Pa. 2010); Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993).  Accordingly, the Court will consider Plaintiff's definitions of the class and the subclasses proposed in its motion.  With this background, the Court will discuss each element for class certification below.

###  A.  Numerosity

A class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  In re Pet Food Prods. Liab. Litig., No. 08-4741, 2010 U.S. App. LEXIS 25628, at *26-27 (3d Cir. Dec. 16, 2010) (quoting Amchem, 521 U.S. at 625).  Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (citation and internal quotation marks omitted).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999); Leeseberg v. Converted Organics, Inc., No. 08-926, 2010 U.S. Dist. LEXIS 124845, at *5 (D. Del. Nov. 22, 2010); Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989).

Here, Defendant does not dispute that the number of class members in the All User Class and each of the proposed subclasses exceeds 40.  Indeed, the number of customers in the All User Class is approximately 15,000.  See Van Tine Dec. Ex. C at 47-48; Defendant's Opposition at 6.

Accordingly, the proposed class meets the numerosity requirement.[4]

### B.    Commonality

Commonality requires that "there are questions of law or fact common to the class." <u>Fed. R. Civ. P.</u> 23(a)(2). The threshold for establishing commonality is straightforward: "The commonality requirement will be satisfied if the named plaintiffs share at least <u>one</u> question of fact or law with the grievances of the prospective class." <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting <u>Baby Neal v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994)) (emphasis added). Indeed, as the Third Circuit pointed out, "[i]t is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the language of Rule 23(a)(2)." <u>In re Schering Plough</u>, 589 F.3d at 97 n.10. Thus, there is a low threshold for satisfying this requirement. <u>Newton</u>, 259 F.3d at 183; <u>In re Sch. Asbestos Litig.</u>, 789 F.2d 996, 1010 (3d Cir. 1986) (highlighting that the threshold of commonality is not high (quotations and citations omitted)).[5]

Indeed, the requirements of commonality and typicality are broadly defined and tend to merge. <u>Baby Neal</u>, 43 F.3d at 56. "Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately

---

[4]Because the Court determines, <u>infra</u>, that the issue of damages would not preclude a finding of predominance or commonality and because the purpose of Plaintiff's alternative subclass definition was to avoid any conflict with issues of damages, the Court's inquiry in this Opinion will focus on the All Users Class.

[5]The Court notes that commonality may be incorporated into the predominance requirement in a Rule 23(b)((3) analysis; however, because the Court declines to certify the class based upon predominance, for the purposes of this Opinion, the Court will separately analyze commonality.

represented." Id.; see General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982). Despite their similarity, commonality – like numerosity – evaluates the sufficiency of the class itself, and typicality – like adequacy of representation – evaluates the sufficiency of the named plaintiff. See Hassine v. Jeffes, 846 F.2d 169, 177 n.4 (3d Cir. 1988); Weiss v. York Hosp., 745 F.2d 786, 810 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985).  More importantly, neither of these requirements mandates that all putative class members share identical claims, see Hassine, 846 F.2d at 176-77, and that "factual differences among the claims of the putative class members do not defeat certification." Baby Neal, 43 F.3d at 56.  In that regard, class members can assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice. Hassine, 846 F.2d at 177-78; cf. Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) (finding constitutional violation in prisoners' being subject to constant threat of violence and sexual assault and rejecting contention that plaintiff must actually be assaulted before obtaining relief). "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded."  Baby Neal, 43 F.3d at 56.

In this case, Plaintiff asserts one count each under the CFAA and NJCFA.  The CFAA provides that any person "who knowingly causes the transmissions of a program, information, code, or command, and as a result of such conduct intentionally causes damage without authorization, to a protected computer," shall be subject to certain sanctions and punishments. 18 U.S.C. § 1030(a)(5)(A).  To state a claim under the NJCFA, a plaintiff must allege each of three elements (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007)(citing Cox v. Sears Roebuck & Co., 138

8

N.J. 2 (1994)).  Here, Plaintiff has met the second requirement of identifying common questions of law and fact among Plaintiff and putative class members.  Plaintiff alleges that Commence intentionally transmitted a software code to Kalow's computer system and that the software code caused damage to it and to other users of the software. In the same vein, Plaintiff alleges that by transmitting the defective software code, Defendant engaged in unfair, false, deceptive, and misleading practices.  More particularly, Plaintiff alleges that Defendant represented that it produced good quality software and businesses relied upon that representation to their detriment when the software stopped working.  These claims arise from the same conduct by Commence.  In that respect, whether Commence's conduct is fraudulent and/or violates the CFAA involves common questions of fact and law.  For example, these questions of fact include whether Commence intentionally inserted a "time bomb" and/or a code which caused the software to fail; whether Commence knowingly and intentionally distributed the software with the knowledge of the defective code or "time bomb"; whether Commence intended to cause harm as a result of these alleged actions; and whether the members of the class have sustained injury as a result of Commence's acts.

Nevertheless, Defendant claims that commonality has not been met in this case since there are divergent factual issues affecting the proposed class.  Rather than disputing that there are no common issues of law and fact shared by the proposed class, Defendant raises issues of fact that it contends would destroy commonality.  For example, Defendant claims that not all users of the software were necessarily networked users; not all networked users were affected by the problem; and not all users of the software were affected the same way as Plaintiff.  Furthermore, Defendant submits that Plaintiff has failed to provide any evidence of ascertainable loss for the class; in particular, a lack of evidence to substantiate Plaintiff's allegations of the "incidental loss" suffered

9

by users who did not have to purchase an upgrade.  Defendant maintains that if those users have no recoverable claim, then they do not share common issues of law and fact with those putative plaintiffs who have allegedly suffered damages.  Defendant's arguments are easily disposed of considering the low threshold for meeting commonality.

First, while there may be factual differences amongst the proposed class members, these differences do not destroy commonality.  Baby Neal, 43 F.3d at 56; Clarke v. Lane, 267 F.R.D. 180, 196 (E.D. Pa. 2010) ("'[T]he commonality standard of Rule 23(a)(2) is not a high bar; it does not require identical claims or facts among class members, as 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class.'" (quoting Chiang v. Veneman, 385 F.3d 256, 265 (3d Cir. 2004)).  The focus on the commonality inquiry is not on these differences as Defendant seems to suggest; rather, Plaintiff and the potential class members are situated such that the success of the claims in this case hinges on similar facts and requires proof of liability regarding Defendant's alleged intentional conduct and whether that conduct allegedly caused injury to the class members.

Second, with respect to Defendant's argument regarding damages, although the Court needs to make certain findings of fact when determining class certification, at this stage, the Court need not decide the extent of the damages suffered by potential class members.  Other than Defendant's own assertion that some class members may not have suffered damages, there is no evidence on the record at this juncture indicating that there are certain users of the software who did not suffer any damages as a result of the alleged "time bomb."  Indeed, Plaintiff is not obligated to prove its case at this stage.   To the extent that issues exist pertaining to individual damages in this case, this fact

would not destroy commonality.[6]  Baby Neal, 43 F.3d at 57 ("The individual damage determinations could be made . . . at a separate phase of the trial, but the class phase could resolve the central issue of liability . . . . ")(citing Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985)); Sterling Velsical Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988)("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action."); see also In re Merck & Co. Vytorin ERISA Litig., No. 08-285, 2010 U.S. Dist. LEXIS 12344, at *32 (D.N.J. Feb. 9, 2010).

## C.    Typicality

Rule 23(a)(3) "requires that the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  In that regard, the typicality requirement ensures that "the class representatives are sufficiently similar to the rest of the class--in terms of their legal claims, factual circumstances, and stake in the litigation--so that certifying those individuals to represent the class will be fair to the rest of the proposed class." In re Schering Plough, 589 F.3d at 597; see, e.g., Newton, 259 F.3d at 182; In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995).  The Third Circuit has explained in determining typicality

> [s]ince one cannot assess whether an individual is sufficiently similar to the
> class as a whole without knowing something about both the individual and the
> class, courts must consider the attributes of the proposed representatives, the
> class as a whole, and the similarity between the proposed representatives and
> the class. This investigation properly focuses on the similarity of the legal
> theory and legal claims; the similarity of the individual circumstances on which
> those theories and claims are based; and the extent to which the proposed
> representative may face significant unique or atypical defenses to her claims.

---

[6]To the extent that the issues of damages may concern other factors in the Court's class certification analysis, the Court will address those concerns later in this Opinion.

11

Id. 597-98 (citations omitted).

Furthermore, "if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." Newton, 259 F.3d at 184 (citing Barnes v. American Tobacco Co., 161 F.3d 127,141 (3d Cir. 1998)); see also 1 Newberg on Class Actions § 3.15, p. 3-78 ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."). Thus, "[a] claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." Baby Neal, 43 F.3d at 63. In other words, the typicality requirement "does not mandate that all putative class members share identical claims," Barnes, 161 F.3d at 141, because "'even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." In re Prudential Ins. Co. America Sales Practice Litig. Agency Actions, 148 F.3d 282, 311 (3d Cir. 1998) (quoting Baby Neal, 43 F.3d at 58). Generally, this requirement, like commonality, has a low threshold. Newton, 259 F.3d at 183.

Defendant argues that Plaintiff's individual claim is not typical of the putative class because the class members used various versions of software dating back to 1991, many of which were not affected even in a networked setting. In that respect, Defendant further argues that on this motion Plaintiff has failed to demonstrate that the error it experienced was similar to that of other users who were using different versions. Additionally, Defendant contends that Plaintiff is atypical because it had to purchase an upgrade of the software while other users did not. For support, Plaintiff relies on an out-of-circuit case, Kaczmarek v. International Business Machines Corp. ("IBM"), 186 F.R.D.

307, 309 (S.D.N.Y. 1999).  In Kaczmarek, customers who had purchased computers equipped with defective digital signal processors brought a class action suit against defendant IBM to recover damages.  Plaintiffs alleged that their claims were typical of the putative class because the problems of the owners of each model of computer were similar.  Id.  The court held that the similarity of plaintiffs' experiences ends with the fact that they all purchased computers manufactured by IBM. Id.  In so holding, the court explained that plaintiffs had different types of computers, warranties and each plaintiff differed in the treatment of his/her computer.  Importantly, however, the court found that the named plaintiffs were atypical from the class members because they misused their computers, which created unique defenses against them. Id. at 313.

Defendant's reliance on Kaczmarek is misplaced  because individual use of the software by members of the class in this case would not have altered the software's function, nor would it affect the alleged "time bomb."  Moreover, rather than seeking to represent buyers of different products who had different problems with different causes – like the plaintiffs in Kaczmarek  – Plaintiff here seeks to represent users of a type of software, albeit different versions, that failed on the same day for the same reasons.

As stated in Baby Neal and Barnes, although the claims and factual circumstances may differ between Plaintiff and individual class members, typicality is still present so long as the injuries occurred from the same alleged conduct.  Plaintiff alleges that the injuries suffered by all the class members resulted from Defendant's "time bomb."  On this point, according to Defendant, the widespread problems experienced with the software were caused by a single subprogram, or a "glitch", common to each version of the software.  See Van Tine Decl. Ex. B at 23-28.  While the parties disagree as to the cause of software's malfunction, there is no dispute that the malfunction

13

is the result of Defendant's conduct, intentional or otherwise.  Thus, contrary to Defendant's assertion, the fact that Plaintiff had to purchase an upgrade does not destroy typicality.  Moreover, while damages resulting from the alleged "time bomb" may differ for certain class members, Plaintiff is typical of the class because it allegedly suffered – just like all other class members – the same alleged malfunction resulting from Defendant's conduct.

### D.    Adequacy

Class representatives must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). This requires a determination of "(1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class. Newton, 255 F.3d at 185 (citing Falcon, 457 U.S. at 157 & n.13; Barnes, 161 F.3d at 141).  The Supreme Court has instructed that this factor "serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem, 521 U.S. at 625.  It also functions as a catch-all requirement that "tends to merge with the commonality and typicality criteria of Rule 23(a)."  Id. at 626 n.20.

Here, on this factor, Defendant argues that because Plaintiff has failed to meet the commonality and typicality factors, the Court should find that Plaintiff is inadequate to represent the proposed class.  Defendant does not identify any conflict between Plaintiff and the class members. Having determined that Plaintiff meets the commonality and typicality requirements, the Court finds Plaintiff's representation is adequate.  Indeed, Plaintiff shares common issues with the putative class as discussed above, and the Court does not find that there is a conflict between Plaintiff and those of the class.  Furthermore, Plaintiff's attorneys, from the law firms of Cohn, Lifland, Pearlman, Herrmann & Knopf, LLP and Miller Law LLC, are qualified to represent the proposed class in this

14

case.  Gleaning from the firms' resumes, they have handled numerous class action cases - including antitrust, securities and consumer protection cases.  Accordingly, the Court finds Plaintiff is adequate to represent the class.

### E.    Requirements of Rule 23(b)(3)

Plaintiff seeks certification under Rule 23(b)(3).  As addressed supra, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  These requirements are known as predominance and superiority. In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009).

### 1.    Predominance

The element of predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," Amchem, 521 U.S. at 623, a standard more exacting than the commonality requirement of Rule 23(a). Id. at 623-24.  In fact, predominance "requir[es] more than a common claim." Newton, 259 F.3d at 187. Rather, "[i]ssues common to the class must predominate over individual issues . . . ." In re The Prudential Ins., 148 F.3d at 313-14.  "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." In re Hydrogen Peroxide, 552 F.3d at 311 (citations and internal quotations omitted).  Indeed, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Newton, 259 F.3d at 172.

"Common issues predominate when the focus is on the defendant's conduct and not on the conduct of the individual class members." In re Mercedes-Benz, 213 F.R.D. 180, 187 (D.N.J. 2003). A plaintiff must "show that the essential elements of the cause of action are capable of proof through evidence that is common to the class." Novak v. Home Depot U.S.A., Inc., 259 F.R.D. 106, 114 (D.N.J. 2009); see In re Constar, 585 F.3d at 780; In re Hydrogen Peroxide, 552 F.3d at 311 ("the task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members. Deciding this issue calls for the district court's rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial."). The Court is mindful that the "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." In re Hydrogen Peroxide, 552 F.3d at 320. Thus, "[c]lass certification is proper only if the [] court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." Id. at 309 (internal quotation marks omitted).

Defendant asserts several reasons why Plaintiff has failed to demonstrate predominance. The Court will address each of these arguments. First, Defendant argues that not all class members were forced to purchase an upgrade. Essentially, Defendant rehashes its argument regarding different damages among class members. In the context of predominance, the Court again finds that while the class members may have incurred different damages as result of the alleged "time bomb," this issue does not preclude a finding of predominance. To arrive at this conclusion, the Court has surveyed in- and out-of- circuit cases.

In the case of In re Flat Glass, the central issue was whether a class comprised of flat glass purchasers could be certified when the members of the class sustained different damages.[7] In re Flat Glass Antitrust Litigation,191 F.R.D. 472, 475 (D.N.J. 1999). The court determined that even though damages would ultimately have to be assessed for each class member, common antitrust issues, which centered on liability, predominated over the issues of damages. Id. at 487. In Cannon v.Cherry Hill Toyota, Inc., plaintiff sought to certify a class which consisted of people who were allegedly defrauded by an automobile dealer's practices in advertising. 184 F.R.D. 540, 542 (D.N.J. 1999). Similar to the argument made here, the defendant there argued that individual assessment of damages would undermine predominance. However, consistent with the holding of In re Flat Glass, the Cannon court found that issues of law and fact concerning liability predominated over issues of individual damages, because the question of fraud impacted each member of the class under the state's consumer fraud act. Id. at 542.

More importantly, the Third Circuit's decision in In re Community Bank of Northern Virgina, 418 F.3d 277 (3d Cir. 2005), guides this Court. The defendants in that case were allegedly involved in an illegal lending scheme wherein they offered loans at higher rates of interests than state law would permit. Id. at 283-84. Once these loans were originated, the higher interest rates and fees charged for the loans generated substantial income for the defendants. Id. The plaintiff sought to certify a class which was comprised of approximately 44,000 individuals and entities all claiming violations of state lending laws. Id. at 303. While inquiry into the monetary loss of the numerous members of the class would be necessary, the court held that this individualized inquiry does not

---

[7]In In re Flat Glass, the class was comprised of at least hundreds of flat glass purchasers. 191 F.R.D. at 477.

prevent certification where class issues predominate. Id. at 305-06.  More particularly, the court explained that when class members are required to prove the same fraudulent scheme, individual determinations of damages are predominated by that common fraudulent scheme. Id. at 306; In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F3d 768, 817 (3d Cir. 1995). Moreover, the Advisory Committee Note states that a case involving fraud "perpetrated on numerous persons by the use of similar representations" can be certified under Rule 23(b)(3) even if damages have to be determined individually.  See In re Loewen Group Secs. Litig., 233 F.R.D. 154, 168 (E.D. Pa. 2005); Baby Neal, 43 F.3d at 57 (finding that individual damage determinations did not undermine commonality finding); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977) (recognizing that the necessity for calculation of damages on an individual basis does not preclude class certification where common issues determining liability predominate); see also In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001)("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 298 (5th Cir. 2001) (affirming district court's determination that common issues predominated because "although calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue").

Attempting to distinguish the aforementioned cases, Defendant contends that damages in those cases were easily ascertainable at the certification stage.  The Court disagrees.  None of the courts in those cases required damages to be precisely calculated.  Indeed, the courts did not engage in a damages calculation.  Rather, those courts clearly were focused on the issues that predominated

18

the class, and they held that individualized damages should be determined at a later stage.[8]  Indeed,

the Third Circuit in In re Community Bank disposed of Defendant's argument in this regard by

expounding:

> it does not necessarily follow that [a] highly individualized inquiry [of
> damages]. . . likely would have precluded . . . class certification under Rule
> 23(b)(3).  The existence of an individual inquiry does not preclude class action
> treatment where all class members face the necessity of proving the same
> fraudulent scheme.  See, e.g., Amchem, 521 U.S. at 625 (stating that even
> though mass accident cases are likely to present significant individual questions
> of liability and damages, such cases "may, depending upon the circumstances,
> satisfy the predominance requirement").

In re Community Bank, 418 F.3d at 306 (citation and quotations omitted).[9]

---

[8] According to Plaintiff, damages may be calculated in several ways.  With respect to the
upgrade customers, damages would include paying for an upgrade, costs for information
technology services to diagnose the problem, and loss productivity costs; these damages are
readily ascertainable and to calculate them is fomulaic.  On the other hand, non-upgrade
customers incurred costs for information technology services to diagnose the problem and
suffered lost productivity.  Plaintiff claims that these damages are also readily established by a
reasonable estimate.  The Court need not engage in a damages calculation at this point; the Court
is satisfied that the questions of liability predominate over issues of individualized damages.

[9] Raising another damages related issue, Defendant argues that because certain users,
individual and/or group, experienced no malfunction when using the software, this issue should
predominate.  For support, Defendant points to deposition testimony by its Chief Executive
Officer, Lawrence Caretsky, and its Chief Technology Officer, William Pape.  Essentially,
Defendant contends that according to Mr. Caretsky, there are users among the proposed class
whose software did not malfunction. See Caresky's Dep. at p. 26-28.  However, other than
Carseky's assertions, there is no other evidence indicating that certain users of Commence's
software were not affected as a result of an alleged "time bomb."  Indeed, Mr. Pape did not
suggest otherwise.  On the other hand, to support its position, Plaintiff offers a letter, dated
January 7, 2007, sent by Mr. Caretsky to Plaintiff's principal, Mr. Springnut, regarding the
malfunction.  In it, Mr. Caretsky stated that the alleged malfunction "impacted every Commence
customer around the world and cost Commence Corporation a significant amount of money to
address."  See Letter Dated January 7, 2007.  Based on that letter, Plaintiff argues that Defendant
conceded that the malfunction affected all users of the software.  At this point, there is no
undisputed evidence as to which users were affected and which were not.  However, this does not
change the Court's analysis because, like the issue of damages, whether class members were
injured could be determined at a later stage.

Next, citing to Plaintiff's Complaint, Defendant avers that Plaintiff has acknowledged that there are predominating issues not common to all class members. Paragraph 7 of the Amended Complaint states: "[i]n order for software to stop working, it must either have been intentionally designed to stop working, or the environment in which it is operating must have been altered, either as the result of the change in other software running on the same computer, or as a result of a change in the computer itself." Am. Compl. at ¶ 7. The Amended Complaint further states that "the only reasonable explanation for the sudden and simultaneous failure of software such as Commence's across thousands of computers around the world is that Commence put a time bomb in the software." Id. at ¶ 12 (emphasis added). Defendant has taken the allegations in paragraph 7 out of context by arguing that Plaintiff concedes that the Court would be "forced to delve into specific inquiries of whether or not particular users had altered their computer systems prior to March 20, 2006." Def. Opposition Brief at p. 17. To the contrary, Plaintiff's allegations of Defendant's liability are premised upon the fact that Commence's software malfunctioned on the same day for every user and thus, the only explanation is the first reason averred in ¶ 7 of the Amended Complaint and as asserted in ¶ 12. There is nothing in the record at this stage that leads the Court to find that Plaintiff is alleging otherwise.

Finally, Defendant argues that Plaintiff seeks to certify a nationwide class of software users but has not offered a choice of law analysis. Defendant maintains that with respect to Plaintiff's fraud claim, consumer protection laws vary from state to state, and a court would have to determine whether New Jersey's consumer fraud act should be applied to the nationwide class. Indeed, in the context of class action certification, the United States Supreme Court has stated that the Court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in

order to satisfy the procedural requirement that there be a 'common question of law.'" Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821 (1985); Nafar v. Hollywood Tanning Sys., 339 Fed. Appx. 216, 220 (3d Cir. 2009). A court "must apply an individualized choice of law analysis to each plaintiff's claims." Nafar, 339 Fed Appx at 220 (citations and quotations omitted). Here, the Court applies New Jersey's choice of law rules because it is exercising supplemental jurisdiction over the state law claims in this federal question lawsuit. See Gluck v. Unisys Corp., 960 F.2d 1168, 1179 n. 8 (3d Cir. 1992) (requiring application of forum state's choice of law principles in diversity cases and pendent state law claims).[10]

New Jersey's most significant relationship test consists of two prongs: the first prong requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. Id. Indeed, the Third Circuit has advised that when applying the most significant relationship test to a NJCFA claim, actual conflicts exist between the NJCFA and the consumer protection laws of other states. Id.; see Agostino v. Quest Dignositcs Inc., 256 F.R.D. 437, 461-62 (D.N.J. 2009) (noting a number of differences among the states' fraud acts); Elias v. Ungar's Food Prod., Inc., 252 F.R.D. 233, 247 (D.N.J. 2008); Fink v. Ricoh Corp., 365 N.J. Super. 520 (Law Div. 2003).

The second prong of the test requires the Court to weigh the factors enumerated in the

---

[10]Relying on In re Mercedes-Benz Tele Aid Contract Litig., Plaintiff argues that it need not analyze the laws of the 50 states because Defendant, headquartered in New Jersey, made the decision not to disclose the time bomb in New Jersey and that New Jersey's interest in regulating its businesses outweighs any competing state's interest in altering the protection of its citizens. The Court is not persuaded by Plaintiff's conclusory argument. In In re Mercedes, the court painstakingly analyzed the factors enumerated in Restatement Section 148(1) and (2) in the context of the facts of that case. See In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 66-68 (D.N.J. 2009). Without such an analysis here, the Court has no basis to adopt Plaintiff's position.

Restatement section corresponding to Plaintiff's cause of action. Nafar, 339 Fed. Appx at 220.

Plaintiff's NJCFA claim is premised upon a knowing omission: Defendant allegedly engaged in an

unfair, false, deceptive, and misleading business practice by failing to disclose a time bomb that it

intentionally placed in the software, and Defendant did so with the intent to fraudulently induce

purchases of the software.  Therefore, the conflict of laws analysis of Restatement Section 148 for

claims sounding in fraud or misrepresentation applies.  Id.; Arcand v. Brother Int'l Corp., 673 F.

Supp. 2d 282, 293-94 (D.N.J. 2009)(Restatement Section 148 applies to knowing omissions under

the NJCFA).

> Under Section 148(1) of the Restatement:

>> When the plaintiff has suffered pecuniary harm on account of his reliance on
>> the defendant's false representations and when the plaintiff's action in reliance
>> took place in the state where the false representations were made and received,
>> the local law of this state determines the rights and liabilities of the parties
>> unless, with respect to the particular issue, some other state has a more
>> significant relationship under the principles stated in § 6 to the occurrence and
>> the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 148 (1971). "This Section recognizes that the state in

which a prospective plaintiff acted in reliance on a defendant's fraud is presumed to have the

predominant relationship to the parties and the issues in the litigation." Agostino, 256 F.R.D. at 462.

However, because the proposed class here is nationwide, the alleged fraudulent omission

underlying the NJCFA claim presumably did not affect all the members of the class in New Jersey,

and thus, the Court has to engage in an analysis of Section 148(2) of the Restatement.  Arcand, 673

F. Supp. 2d at 295.  That Section provides:

>> (2) When the plaintiff's action in reliance took place in whole or in part in a
>> state other than that where the false representations were made, the forum will
>> consider such of the following contacts, among others, as may be present in the

particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

> (b) the place where the plaintiff received the representations,

> (c) the place where the defendant made the representations,

> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.  "[T]he Restatement distinguishes between, on the one hand, fraud claims in which the defendant's alleged misrepresentations and the plaintiff's reliance on those statements took place in the same state, and on the other those in which the misrepresentations and reliance occurred in different jurisdictions."  In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 64 (D.N.J. 2009).  In the former situation, "the state in which both the misrepresentations and reliance occurred is presumed to have the 'most significant relationship' with the litigation."  Id. (citation omitted).  In the latter scenario, the Court "must weigh the factors enumerated in [S]ection 148(2) in order to determine which state has the greatest ties to the [plaintiff's] fraud claim."  Id. at 64-65.  Although the NJCFA claim here sounds in fraudulent omission, rather than misrepresentations, Section 148(2) applies with equal force. Arcand, 673 F. Supp. 2d at 295.

Here, while Plaintiff discussed choice of law in a cursory manner, the lack of a full choice

of law analysis, particularly the weighing of the Section 148(2) factors, is problematic.[11]  These factors are fact-based, and the Court does not have sufficient information on this record to make an informed decision.  See In re Hydrogen Peroxide, 552 F.3d at 320 ("The plain text of Rule 23 requires the court to find, not merely assume, the facts favoring class certification.")(citations and internal quotations omitted).  It would appear that if New Jersey has the most significant relationship and the NJCFA applies to the class, a finding of predominance in this case would be a more straightforward analysis.[12]  However, if, ultimately, the factors weigh in favor of this Court applying the laws of other states' consumer fraud statutes, Plaintiff would be faced with an uphill battle of demonstrating predominance.  Indeed, this question cannot be answered on this motion and thus, the Court declines to certify the class.[13]

### 2.     Superiority

Nevertheless, in the interest of streamlining the issues, the Court will assess whether the superiority prong has been met.  The second prerequisite to class certification contained in Rule 23(b)(3), "superiority," requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem

---

[11]Indeed, there is also a complete lack of analysis of the factors enumerated in Section 6 of the Restatement.

[12]With respect to Plaintiff's federal cause of action pursuant to CFAA, the Court finds that Plaintiff has shown that common issues of the class related to Defendant's liability would predominate over individual issues.

[13]Plaintiff argues that because Defendant produced a software license which provides that the laws of the State of New Jersey govern the license, Defendant should be estopped from arguing that New Jersey law would not apply to a nationwide class.  The Court disagrees because Plaintiff's fraud claim is not based upon any provision of the software license, and the choice of law clause in that license is not dispositive here.  The Court must conduct a choice of law analysis on the fraud claim.

Prods., 83 F.3d 610, 632 (3d Cir. 1996); In re Mercedes-Benz, 257 F.R.D. at 75.  In doing so, courts are guided by four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Upon consideration of those factors, the Court finds that a class action would be the most efficient method for adjudicating Plaintiff's claims, if Plaintiff can show predominance. First, individual class members would have little or no interest in prosecuting separate actions.  Indeed, when class members suffer damages in small amounts – as would be the case here – "it would be economically infeasible for them to proceed individually."  Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997); see Windsor, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").  Based on the record, the Court finds that the claims here may range from less than a hundred dollars to at the most, tens of thousands of dollars, such as the $15,211 Plaintiff was required to pay for the upgrade.  In either scenario, the expenses of litigation would far outweigh the recovery.

Second, according to Plaintiff, and not disputed by Defendant, Plaintiff is the only class member who has commenced litigation.  As such, this factor would not weigh against class certification.  Next, the determination of the third factor - the desirability of concentrating the litigation claims in the one forum – is intertwined with the Court's choice of law analysis.  However, the Court notes that, usually, a class action brought in the same geographic area as a defendant company's principal place of business is appropriate.  See In re prudential Ins. Co. Am. Sales Practice Litig., 962 F. Supp. 450, 524 (D.N.J. 1997).  Moreover, the proceedings in this Court have advanced through several rounds of motions and discovery and thus, the concentration of Plaintiff's claims in this forum would greatly streamline the adjudication of those claims.  Finally, Defendant's argument whether this case is manageable as a class action centers on its previous arguments regarding commonality and predominance; the Court has already address those concerns.  The Court finds that if the class is certified, it would not give rise to any difficulties that would make the remainder of this litigation unmanageable.

In sum, while the Court has ruled that most of the factors involved in certifying a class favor Plaintiff, the Court declines to certify the class at this juncture due to a lack of choice of law analysis relating to predominance. Therefore, the Court denies Plaintiff's motion without prejudice.

DATED: February 28, 2011                               /s/   Freda L. Wolfson
                                                        The Honorable Freda L. Wolfson
                                                        United States District Judge