UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
KALOW & SPRINGUT, LLP, on      :    HONORABLE JOSEPH E. IRENAS
behalf of itself and others    :  CIV. ACTION NO. 07-3442 (JEI/AMD)
similarly situated,            :
                               :              OPINION
            Plaintiff,         :
                               :
     v.                        :
                               :
COMMENCE CORPORATION,          :
                               :
            Defendant.         :
```

**APPEARANCES:**

COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
By:  Peter S. Pearlman, Esq.
Park 80 Plaza West One
Saddle Brook, New Jersey 07663

and

MILLER LAW LLC
By:  Marvin A. Miller, Esq.
     Matthew E. Van Tine, Esq.
115 S. LaSalle St., Suite 2910
Chicago, Illinois 60603
            Counsel for Plaintiff

MARGOLIS EDELSTEIN
By:  Bruce Barrett, Esq.
100 Century Parkway, Suite 200
P.O. Box 5082
Mount Laurel, New Jersey 08056
            Counsel for Defendant

**IRENAS**, Senior District Judge:

        Presently before the Court is Plaintiff's Renewed Motion to
for Class Certification as to Plaintiff's proposed New Jersey
Consumer Fraud Act class action claim (Count II of the Amended
Complaint).  For the reasons stated herein, the Motion will be

granted.

## I.

On March 20, 2006, across the United States (and allegedly the globe), customers using Defendant Commence Corporation's CRM software experienced the same problem: the "synchronization engine" in the software stopped working.[1]  The parties agree that this simultaneous failure was caused by a defect in the software code when it was written in the mid-1990s.

Plaintiff, the law firm of Kalow & Springut, LLP, contends that this defect was intentionally inserted into the code to act like a "time bomb," ensuring that on the predetermined date (March 20, 2006) Commence software users would have no choice but to purchase a software fix or upgrade their software to resume normal functioning.  Commence Corporation, on the other hand, asserts that the defect was simply a result of a mistake, and that they were not aware of it until the failure occurred.

Plaintiff's Amended Class Action Complaint originally contained three claims: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.*; and (3) "Violation of the Consumer Fraud Acts of the States Where

---

[1]  The software is primarily used among networked computers such that if one individual user changes a piece of information (such as a phone number) the change is reflected in all of the networked computers.  When the synchronization engine failed, inputted changes were not reflected on other users' computers.

Defendant Does Business," (Amend. Compl. Count III, pp. 8-12) which the record indicates is the District of Columbia, Puerto Rico, and every state except Wyoming.

The proposed class is "all of the networked users of Commence software who suffered damages when the software stopped working on March 20, 2006." *Kalow & Springut v. Commence Corp.*, 272 F.R.D. 397, 400-01 (D.N.J. 2011).[2]  The record indicates that there are 2,122 potential class members dispersed throughout Puerto Rico, Washington, D.C., and every State except Wyoming.  (Van Tine Decl. Ex. I)

Prior to this case's recent reassignment to the undersigned, District Judge Wolfson issued three decisions relevant to the instant Motion.  First, upon Commence's Motion pursuant to Fed. R. Civ. P. 12(b)(6), Judge Wolfson dismissed the third count of the Amended Complaint, leaving only the CFAA and NJCFA claims.  *Kalow & Springut v. Commence Corp.,* No. 07-3442, 2009 WL 44748 (D.N.J. Jan. 6, 2009).

Second, Judge Wolfson granted Kalow & Springut's Motion for Class Certification as to the CFAA claim.  *Kalow & Springut v. Commence Corp.,* No. 07-3442, 2011 WL 3625853 (D.N.J. Aug. 15,

---

[2]  The Amended Complaint's proposed class is slightly different: "all persons and entities who purchased Commence Corporation software and were using it as of March 20, 2006." (Amend. Compl. ¶ 25).  Commence objected to the change, but Judge Wolfson (who previously presided over this suit) held that "a court is not bound by the class definition proposed in the complaint." *Kalow & Springut v. Commence Corp.,* 272 F.R.D. at 402 (internal citations and quotation omitted).  Commence does not ask this Court to reconsider that ruling.

2011).

Third, and most directly relevant to the instant Motion, Judge Wolfson denied without prejudice Kalow & Springut's Motion for Class Certification as to the NJCFA claim.  *Kalow & Springut v. Commence Corp.*, 272 F.R.D. 397 (D.N.J. 2011).  Importantly, the Judge ruled that all of the Fed. R. Civ. P. 23(a) requirements (numerosity, commonality, typicality, and adequacy) were met, and that the superiority requirement of Rule 23(b)(3) was also met.  *Id.* at 402-06, 411.  As to the only remaining requirement-- Rule 23(b)(3)'s predominance requirement-- Judge Wolfson concluded that the issue of whether a common question of law predominated turned on a choice of law analysis which Kalow & Springut only "discussed . . . in a cursory manner."  *Id.* at 410.  Judge Wolfson explained further:

> the lack of a full choice of law analysis, particularly the weighing of the Section 148(2) factors [of the Restatement (Second) of Conflict of Laws], is problematic.  These factors are fact-based, and the Court does not have sufficient information on this record to make an informed decision.  *See In re Hydrogen Peroxide*, 552 F.3d at 320 ("The plain text of Rule 23 requires the court to find, not merely assume, the facts favoring class certification.")(citations and internal quotations omitted).  It would appear that if New Jersey has the most significant relationship and the NJCFA applies to the class, a finding of predominance in this case would be a more straightforward analysis.  However, if, ultimately, the factors weigh in favor of this Court applying the laws of other states' consumer fraud statutes, Plaintiff would be faced with an uphill battle of demonstrating predominance.  Indeed, this question cannot be answered on this motion and thus, the Court declines to certify the class.

*Id.* at 410.  Accordingly, Judge Wolfson denied without prejudice

4

the Motion to Certify the NJCFA claim.

After additional discovery, Kalow & Springut presently renews its Motion for Class Action Certification of the NJCFA claim.  The parties have also submitted additional briefing on the effect of *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc), cert. denied by 132 S.Ct. 1876 (2012).[3]

## II.

Federal Rule of Civil Procedure 23(b)(3) provides in relevant part:

> A class action may be maintained if Rule 23(a) is satisfied and if:  .  .  .  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members  .  .  .  .  The matters pertinent to th[is] finding[] include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and
>
> (D) the likely difficulties in managing a class action.

---

[3]  *Sullivan* was decided after the instant Motion was fully briefed.  By letter Order dated September 26, 2012, this Court directed the parties to brief the effect of *Sullivan* on the instant Motion.

The party seeking certification bears the burden of establishing predominance (and every other Rule 23 element) by a preponderance of the evidence.  *Behrend v. Comcast Corp.,* 655 F.3d 182, 190 (3d Cir. 2011).

## III.

As Judge Wolfson previously set forth in her opinion, "actual conflicts exist between the NJCFA and the consumer protection laws of other states," *Kalow & Springut*, 272 F.R.D. at 409.  Thus the Court must look to the Restatement (Second) of Conflict of Laws § 148(2) to determine whether the NJCFA should apply to the claims asserted by out-of-state class members. *Id.* at 410.[4]  The Court also looks to the choice of law principles set forth in § 6 of the Restatement.  *See* Restatement (Second) of Conflict of Laws § 148, comment b; *Kalow & Springut*, 272 F.R.D. at 410 n.11.

With regard to claims of fraud, Section 148(2) provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,

---

[4]  As Commence Corporation concedes, there is no choice of law issue with regard to the 94 New Jersey class members.

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Section 6 further provides, in relevant part, that "the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

Some of the § 148(2) factors weigh in favor of applying New Jersey law. Most obviously, Commence Corporation is incorporated in New Jersey and has its principal place of business in New

Jersey[5], *see* § 148(2)(d).  Moreover, the "tangible thing" at issue here-- the computer code-- was written in New Jersey,[6] *see* § 148(2)(e).

On the other hand, some of the § 148(2) factors weigh in favor of applying the law of the states where the potential class members are located: the potential class members are obviously domiciled in their respective states, *see* § 148(2)(d); they most likely purchased the software in their state of residence,[7] and relied on the alleged fraudulent omission in that state, *see* § 148(2)(a), (b).

But when the § 6 factors are also considered-- particularly § 6(b), (c), and (e)-- it becomes clear that New Jersey law should be applied.  New Jersey's policies and interests are more strongly implicated by the instant suit than the states where the potential class members reside.  As the undersigned has observed before,

> [w]hile there can be no doubt that the New Jersey legislature desired to protect its own residents, it is equally clear that this state has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries.  Its magnificent seashore, to say nothing of casino gambling, bring millions of visitors annually to New Jersey making tourism a major industry.  This industry would suffer if the state developed a reputation as a place were sellers ripped off the unsuspecting visitor.

---

[5]  (Amend. Compl. ¶ 3; Answer ¶ 3)

[6]  (Van Tine Decl. Ex. H; Caretsky Dep. p. 6-7)

[7]  The software at issue mostly was not sold directly by Commence Corporation but rather, was sold by numerous distributors throughout the world.  (Commence Corp.'s Ex. C; Caretsky Dep. p.

*Boyes v. Greenwich Boat Works*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998); *see generally Weinberg v. Sprint Corp.,* 173 N.J. 233, 249 (2002) (stating that one legislative purpose behind creating a private right of action under the NJCFA was to "punish the wrongdoer through the award of treble damages").

Likewise, in *DalPonte v. American Mortgage Express Corp.*, the undersigned again recognized New Jersey's strong interest "in regulating its domestic businesses and in deterring fraudulent business practices."  No. 04-2152, 2006 U.S. Dist. LEXIS 57675 at *21 (D.N.J. Aug. 16, 2006).

This case is analogous to *DalPonte*, which was also a consumer fraud class action lawsuit.  There, this Court concluded that New Jersey's interests in having its law apply were "especially strong" given the fact that the defendant was a New Jersey corporation with its principal place of business in New Jersey and its employees were located in New Jersey.  *Id.* at *21.

While the Court acknowledges that each state in which the proposed class members reside has some interest in having its own consumer protection law applied to its own resident consumers, that interest is not as strong as New Jersey's interests as described above.  Moreover, applying New Jersey law is not likely to frustrate the other states' interests in protecting its residents because "[t]he available legislative history demonstrates that the NJCFA was intended to be one of the strongest consumer protection laws in the nation."  *DalPonte*, 2006 U.S. Dist. LEXIS at *19

(internal citation and quotation omitted); *see generally Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 547 (2009) ("the history of the [NJCFA] demonstrates a strong and consistent pattern of expanding the rights of consumers and protecting them from a wide variety of marketplace tactics and practices deemed to be unconscionable."). In this regard, the New Jersey Supreme Court has observed, "[i]f a strong state policy or interest will [not be] frustrated by the failure to apply [that state's law], it is highly unlikely that that state has any interest whatsoever in blanketing that particular issue with its law." *Fu v. Fu*, 160 N.J. 108, 122-23 (1999) (cited with approval by *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008)). Accordingly, the Court holds that the NJCFA applies to all proposed class members' claims.

This conclusion in turn leads to the conclusion that common issues of fact and law will predominate the litigation of this suit; therefore certification of Count 2 of the Amended Complaint (the NJCFA claim) is appropriate. Not only is the same legal issue presented (i.e., is Commence Corporation liable under the NJCFA?), common issues of fact will also predominate because this suit focuses on "the defendant's conduct" which, in this case is undsiputedly "common as to all class members" insofar as the central factual question is whether Commence Corporation intentionally inserted the software code defect. *Sullivan v. DB*

*Investments, Inc.,* 667 F.3d 273, 299 (3d Cir. 2011).[8]

Thus, the Court will grant Plaintiff's Renewed Motion to
Certify the Class as to the NJCFA claim.


                                **IV.**

For the above-stated reasons, Kalow & Springut's Renewed
Motion for Class Certification of the New Jersey Consumer Fraud
Act claim will be granted.  The Court will issue an appropriate
Order.


Date: December 7, 2012

                         ___s/ Joseph E. Irenas_____
                         JOSEPH E. IRENAS, S.U.S.D.J.


---

        [8]    *Sullivan* seems to call into question whether, at the
class certification stage, a district court must engage in a
choice of law analysis when conducting the predominance inquiry.
*See* 667 F.3d at 301 (explaining that "predominance is not
considered deficient merely because claims are subject to the
varying laws of fifty states"); *id.* at 301, n.25 (observing that
"[o]ther courts have similarly declined to examine the controlling
substantive law pertinent to the asserted claims at the class
certification stage"); *id.* at 299, n.21 (observing that in
analyzing predominance, "[*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)] did not consider whether every class
member even possessed a claim under Delaware law, nor did it
undertake a choice-of-law analysis to determine whether all
members in the nationwide class could assert a claim under the
Delaware statute.").  However, certainly nothing in *Sullivan*
suggests that a district court is prohibited from conducting such
an analysis if it so chooses.

                                11